UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS EDWARD SADLER, II,

    Petitioner,                                                    Civil Action No.  10-CV-11614

v.                                                                              HON. BERNARD A. FRIEDMAN

CAROL R. HOWES,

    Respondent.
_____/

**OPINION AND ORDER
DENYING PETITION FOR A WRIT OF HABEAS CORPUS
BUT GRANTING IN PART A CERTIFICATE OF APPEALABILITY**

Petitioner Thomas Edward Sadler, II, has applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The habeas petition challenges petitioner's plea-based convictions for criminal sexual conduct, kidnapping, and assault with intent to rob while armed.  Petitioner alleges that his trial attorney was ineffective and that the plea agreement was illusory.  For the reasons stated below, the court concludes that these claims do not warrant habeas corpus relief.

**I. Background**

Petitioner was charged with assault with intent to commit murder, kidnapping, assault with intent to rob while armed, and three counts of first-degree criminal sexual conduct.  The charges arose from an incident that occurred in Genesee County, Michigan, on September 13-14, 1997.  The complainant was a 38-year old woman, who was walking alongside Mount Morris Road near Interstate 75 when petitioner offered to give her a ride.  The woman accepted petitioner's offer and got into his car.  By his own admissions, petitioner subsequently attempted to take the woman's ring by force, held her against her will, and sexually penetrated her in a field while threatening her

with a flashlight.

On June 2, 1998, petitioner pleaded guilty to kidnapping, MICH. COMP. LAWS § 750.349, assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, and one count of criminal sexual conduct in the first degree, MICH. COMP. LAWS § 750.520b. In return, the prosecutor dismissed the other three counts and a notice charging petitioner with being a habitual offender, second offense.

Petitioner subsequently moved to withdraw his guilty plea on the grounds that he was innocent of the charges and wanted an opportunity to present his version of the facts to a jury. On June 22, 1998, the trial court held a hearing on petitioner's motion and permitted petitioner to testify. The trial court denied petitioner's motion after concluding that his testimony at the motion hearing was not credible and that he was merely attempting to avoid sentencing. The trial court opined that the version of the facts which petitioner gave at his plea was consistent with the other evidence and was the more credible version. On June 23, 1998, the trial court sentenced petitioner to life imprisonment for the kidnapping and the assault with intent to rob and 30 to 60 years in prison for the criminal sexual conduct.

In 1999, petitioner retained a different attorney and filed another motion to withdraw his plea. He alleged that his plea was involuntary, unintelligent, and unknowing and that trial counsel had been ineffective. At oral arguments on the motion, petitioner maintained that trial counsel had failed to hire an expert witness and an investigator and had coerced him into pleading guilty by making false promises and using the plea as a stalling tactic. The trial court denied petitioner's motion because there was no basis for setting aside the plea. Petitioner alleges that he was denied a direct appeal from the trial court's ruling due to his former attorney's negligence and

incompetence.

In 2008, petitioner filed a motion for relief from judgment in which he raised his habeas claims and alleged that his first-tier direct appeal to the Michigan Court of Appeals was lost through attorney neglect. The trial court restored petitioner's right to file an application for leave to appeal in the Michigan Court of Appeals, but denied petitioner's motion in all other respects.

Petitioner then filed a timely application for leave to appeal, alleging among other things, that trial counsel was ineffective and that his plea was based on an illusory bargain. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Sadler*, No. 292960 (Mich. Ct. App. Sept. 9, 2009). On January 29, 2010, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Sadler*, 485 Mich. 1081 (2010).

Petitioner filed his habeas corpus petition through counsel on April 21, 2010. He alleges that (1) he was denied his constitutional right to effective assistance of counsel by his trial attorney's outcome-determinative errors and (2) his guilty plea was based on an illusory bargain. Respondent argues in an answer to the petition that petitioner's claim about trial counsel is fabricated. Respondent also contends that petitioner's plea was knowingly, intelligently, and voluntarily made; petitioner is seeking to withdraw a valid plea because he would rather take his chances at trial; the claim that counsel coerced petitioner into pleading guilty is not supported by the record; and petitioner has failed to demonstrate that his plea was invalid due to ineffective assistance of counsel.

## II. Legal Standards

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, state prisoners are entitled to a writ of habeas corpus only if the state court's adjudication of their claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

*Harrington*, 131 S. Ct. at 786.  To obtain a writ of habeas corpus from a federal court, a petitioner must show that the state court's decision "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786-87.

## III. Discussion

### A.  Trial Counsel

#### 1.  The Alleged Failure to Investigate and Prepare for Trial

Petitioner alleges that his attorney failed to investigate and properly prepare for trial. More specifically, petitioner contends that if his attorney had properly investigated the case he would have discovered that the complainant's allegations about the gravity of her injuries were not credible.  Petitioner also contends that he could have asserted a claim of innocence or a claim that his actions were not as serious as the complainant maintained.

Habeas petitioners claiming ineffective assistance of counsel have a "heavy burden of proof," *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005), "and 'must show that counsel did not attempt to learn the facts of the case . . . .'"  *Titlow v. Burt*, 680 F.3d 577, 587 (6th Cir. 2012) (*quoting Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006)).

> "Counsel cannot responsibly advise a client about the merits of different courses of action, [and] the client cannot make informed decisions, . . . unless counsel has first conducted a thorough investigation . . . ." *Dickerson v. Bagley*, 453 F.3d 690, 694 (6th Cir. 2006) (noting that such an investigation "should begin as quickly as possible" in order to aid in plea negotiations (internal quotation marks omitted)).  The Sixth Amendment does not require that counsel provide an absolutely *correct* assessment of the comparative risks of a guilty plea versus a trial, but the Supreme Court has "recognize[d] that counsel must at least be *aware* of such risks, especially where the

> lack of awareness directly impacts the reasoning behind whatever advice is provided." *Miller* [*v. Straub*, 299 F.3d 570, 584 (6th Cir. 2002)], (Gilman, J., concurring) (emphasis added) (discussing *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

*Id.*

Although petitioner maintains that he had a triable case, the complainant reported to the police that petitioner repeatedly struck her in the head with a flashlight while threatening to kill her and ordering her to take off her pants. At some point, the car crashed into a tree, and petitioner pulled the complainant by the hair across gravel. She tried to run away, but petitioner tackled her, dragged her into a field, and raped her.

Medical evidence established that the complainant was treated for abrasions on her hip, buttocks, knees, and feet and for bruised ribs, a broken nose, lumps on her head, scrapes on her forehead, back and elbow, and bruising under her right eye. At petitioner's sentencing, she stated that she endured three face reconstruction surgeries, had many scars on her back and legs, and could not wear sandals because of injuries to her feet. (Tr. June 23, 1998, at 11.)

While it is true that the complainant stated in a subsequent civil complaint against petitioner that petitioner's negligent driving caused her head and nose injuries, she also stated in the complaint that petitioner permanently injured her by striking her with his fists and a large flashlight. During an interview with the police, she claimed that petitioner hit her in the face with the flashlight *before* the crash. The crash, moreover, would not have caused the abrasions to her buttocks, allegedly caused by being dragged half-naked across gravel. Given the victim's allegations and the supporting medical documentation, petitioner would not have had a good chance of convincing a jury that the complainant's injuries were not as serious as she maintained.

Nor does it appear that petitioner had a credible claim of innocence. Blood consistent with the complainant's blood was found on his flashlight, and the complainant's injuries would have made it difficult to show that the sexual penetration was consensual.

Furthermore, even if there were discrepancies in the complainant's version of the facts, trial counsel appears to have been aware of them. He argued at the hearing on petitioner's first motion to withdraw the plea that the complainant had told many stories and that her stories changed from interview to interview. (Tr. June 22, 1998, at 5-8.) Petitioner has failed to show that trial counsel did not adequately investigate the facts or properly prepare for trial.

### 2. Counsel's Advice to Plead Guilty

Petitioner next alleges that trial counsel was ineffective for advising him to plead guilty. The record before the court, however, indicates that trial counsel's performance was objectively reasonable and within the range of competence expected of defense attorneys in criminal cases. For reasons set forth more fully below, petitioner has failed to show that his trial attorney was ineffective.

The Supreme Court recently held that, when "a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012). But to prevail on a claim that trial counsel was ineffective, the petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This requires showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id.* at 687. In the context of a guilty plea, a deficient performance is one that fell below an objective standard of reasonableness or was outside the range

7

of competence demanded of attorneys in criminal cases. *See Hill v. Lockhart*, 474 U.S. 52, 56-7 (1985).

The "prejudice" prong of the two-part *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. at 59. In other words, petitioner "must show [that] the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384. Petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

### a. Advising Petitioner to Plead Guilty for Financial Reasons

Petitioner alleges that trial counsel encouraged him to plead guilty as a stalling tactic. According to petitioner, trial counsel needed time to prepare for trial and recommended that petitioner plead guilty so that he and his family could obtain additional money, which was needed to pay the attorney's fee.

Petitioner has submitted several affidavits to support this claim. He alleges in his own affidavit that he initially refused to plead guilty, but trial counsel informed him that additional money was needed to hire an investigator and an expert witness and to pay the attorney's fee. Petitioner alleges that he was also told he could withdraw the plea and go trial after the fee was paid. Petitioner claims that he agreed to plead guilty in the belief that he could later withdraw the plea and go to trial when he acquired the necessary funds to pay his attorney.

Petitioner's ex-wife, Tabitha Sadler, states in an affidavit that petitioner's former fiancee, Amy Shively, informed her that trial counsel instructed petitioner to plead guilty to stall for

8

time so that the family could gather money to pay for investigators. Ms. Sadler states in another affidavit that she personally spoke with trial counsel after petitioner pled guilty and was told that petitioner did so because counsel was not ready for trial and was stalling for time until the family could obtain money to pay for further investigation. According to Ms. Sadler, trial counsel expected to get the plea withdrawn without any problem after the family obtained the money. Other relatives, including petitioner's former mother-in-law, two aunts, and a brother have signed affidavits making similar allegations.

The affidavits signed by petitioner's mother-in-law, aunts, and brother are unpersuasive because they are based on what other people supposedly told them, as opposed to actual conversations with trial counsel. Only petitioner's and Tabitha's affidavits are based on conversations purportedly held with trial counsel. Even those affidavits are questionable because, at petitioner's plea, the trial court "made a careful and searching inquiry to make sure the plea was entered into voluntarily." *United States v. Green*, 388 F.3d 918, 923 (6th Cir. 2004).

Petitioner claimed at his plea that no one had threatened him or forced him to enter his plea. He assured the trial court that he wanted to plead guilty and that it was his choice to plead guilty. (Tr. June 2, 1998, at 9-10, 12.) Although he claims in his habeas petition that his plea was scripted by his trial attorney, he provided a factual basis for his plea in a lengthy colloquy with the trial court. (*Id*. at 12-31.) He said nothing about his trial attorney encouraging him to plead guilty for financial reasons.

Likewise, at the hearing on his first motion to withdraw the guilty plea, petitioner made no complaints about his trial attorney, despite being given an opportunity to testify. Instead, he claimed that he was innocent of the charged crimes and that he wanted an opportunity to tell his

9

version of the facts to a jury. He explained that, after being offered a plea bargain, he thought about it overnight, talked with friends and family, received some advice from other inmates, and consulted his attorney. He then decided to accept the plea offer because he thought he would have a better chance of seeing his four-year-old daughter when she was fifteen years old if he pled guilty. He did not mention any financial considerations.

Petitioner alleges that he did not say anything about trial counsel at the hearing on his motion to withdraw his plea because the attorney in question was still representing him at the time. But if he had been unwilling to plead guilty on June 2, 1998, and felt pressured by trial counsel into pleading guilty, he could have mentioned this to the trial court at the motion hearing or at his subsequent sentencing and requested an adjournment for the purpose of seeking new counsel.[1] It would have been consistent to say that he was innocent and that his trial attorney had pressured him into pleading guilty.

To conclude, the record does not support petitioner's claim that he was advised to plead guilty on the basis of his attorney's concerns about getting paid and needing money for an investigator or expert witness. Petitioner seeks an evidentiary hearing to supplement the record, but habeas review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).[2]

---

[1] At the sentencing, petitioner stated that he was remorseful and sorry for what happened.

[2] Although the state appellate courts rejected petitioner's claims in one-sentence orders denying leave to appeal, the trial court rejected petitioner's claims on their merits. Petitioner first raised his claim about trial counsel in his second motion to withdraw the plea. The trial court denied his motion after reviewing the supporting affidavits and stating that it found no basis for setting aside the plea. Petitioner raised his claim again several years later in his motion for relief from judgment. The trial court restored petitioner's right to appellate review, but denied his motion in all other respects. Because there is no basis for concluding that the trial

Consequently, petitioner is "is stuck with 'the record that was before the state court,'" and "is not entitled to an evidentiary hearing." *Bourne v. Curtin*, 666 F.3d 411, 415 (6th Cir. 2012) (*quoting Pinholster*, 131 S. Ct. at 1398), *cert denied*, No. 11-1241, 2012 WL 1340784 (U.S. June 11, 2012).

### b. Advising Petitioner that He Could Withdraw his Plea

Petitioner claims that trial counsel falsely informed him that he would be able to withdraw his guilty plea. Even if trial counsel misrepresented the law or the facts, the trial court advised petitioner at the plea proceeding that he was waiving his right to a trial by pleading guilty. The trial court also stated that, once the guilty plea was accepted, petitioner could not return to court and claim that somebody had promised him something or forced him to plead guilty. (Tr. June 2, 1998, at 11-12.) The trial court's plea colloquy cured any misunderstanding that petitioner may have had about his right to withdraw his guilty plea. *Ramos v. Rogers*, 170 F.3d 560, 561 (6th Cir. 1999).

### B. Whether the Guilty Plea was Involuntary and Illusory

Petitioner also argues that his guilty plea was involuntary because it was based on an illusory bargain. Petitioner contends that he received no benefit from pleading guilty and that trial counsel was ineffective for encouraging him to plead guilty.

"A guilty or no-contest plea involves a waiver of many substantial rights." *Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir. 2008). Consequently, a plea must be a

---

court denied petitioner's claim on procedural grounds, the trial court is deemed to have adjudicated petitioner's claims on the merits. *See Richter*, 131 S. Ct. at 784-85 (explaining that, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary").

voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

"A guilty plea can be involuntary as a result of the ineffective assistance of counsel," *United States v. Gardner*, 417 F.3d 541, 545 (6th Cir. 2005), or due to "[i]llusory representations made by the prosecution to induce a defendant to waive his right to trial and instead enter a guilty plea . . . ." *Spearman v. United States*, 860 F. Supp. 1234, 1250 (E.D. Mich. 1994). A plea is not invalid simply because the defendant may not have "correctly assess[ed] every relevant factor entering into his decision," *Brady*, 397 U.S. at 757, but a plea agreement that provides no benefit and only detriment to the defendant is an unconscionable contract and unenforceable. *United States v. Randolph*, 230 F.3d 243, 250 (6th Cir. 2000).

There was no sentencing agreement in this case, and petitioner stated at the plea proceeding that he had no expectation from his plea other than what was covered in the plea bargain. (Tr. June 2, 1998, at 12.) He also acknowledged that the offenses for which he was pleading guilty carried a maximum penalty of life imprisonment. (*Id*. at 8-9.) Thus, he cannot reasonably argue that he expected a shorter sentence than the one he received.

Furthermore, petitioner derived more than one benefit from pleading guilty: three felony charges carrying a maximum penalty of life imprisonment were dismissed. This fact belies petitioner's argument that his plea was illusory and that counsel improperly advised him to accept an illusory plea agreement. *See People v. Harris*, 224 Mich. App. 130, 134-135 (1997).

Petitioner also contends that dismissing the three felony charges did not benefit him because he pled guilty to crimes with the same maximum penalty of life imprisonment, and the sentences on the dismissed charges would have run concurrently with the counts to which he pled

guilty. This claim lacks merit because "[a] conviction with no effect on a sentence may punish a defendant in several ways, including an adverse effect on parole considerations." *People v. Graves*, 207 Mich. App. 217, 220 n.2 (1994). Thus, the dismissal of three charges was beneficial.

A second benefit to pleading guilty was that the prosecutor declined to charge petitioner as a habitual offender. Petitioner asserts that the benefit of having the habitual offender charge dismissed was eliminated when he was sentenced to two life sentences and a lengthy term of years for the criminal sexual conduct conviction.

Even assuming that petitioner could not have received a greater sentence as a habitual offender, he testified at the hearing on his first motion to withdraw the guilty plea that he would not be eligible to earn good-time credits in prison if he were sentenced as a habitual offender. (Tr. June 22, 1998, at 21.) He appears to have been correct. *See* MICH. COMP. LAWS § 769.12(4) (indicating that a person sentenced as a habitual offender for an offense other than a major controlled substance offense generally is not eligible for parole until expiration of the minimum term fixed by the sentencing judge); *see also Manuel v. Dep't of Corr.*, 140 Mich. App. 356, 358 (1985) ("habitual offenders do not accrue good-time credits, regular or special"). Being able to earn good-time credits in prison is a definite benefit because it has the potential for reducing the amount of time spent in prison.

The court concludes that petitioner received benefits from pleading guilty and that his plea bargain was not illusory. Therefore, petitioner's plea was not involuntary, and trial counsel was not ineffective for advising petitioner to plead guilty.

**IV. Conclusion and Order**

The state courts' rulings on petitioner's claims were not contrary to clearly established federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  Accordingly,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability shall issue on petitioner's ineffective-assistance-of-counsel claim.

S/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: August 22, 2012
         Detroit, Michigan